**CITY OF DALLAS, Appellant,**

v.

**Charles J. HAMMOND, Administrator of the Estate of Paul C. Hammond, Deceased, Jimmie L. Kyser, and Conrad D. Medlock, Jr., Appellees.**

**No. 2-84-070-CV.**

Court of Appeals of Texas, Fort Worth.

June 12, 1985.

---

Law Office of Craig M. Fowler and Craig M. Fowler, Dallas, Kyle, Schuerenberg & Grimes and Gary Allmon Grimes and Susan Morgan Farris, Mesquite, for appellees.

## OPINION

HILL, Justice.

This is an appeal by the City of Dallas from the judgment of the trial court that the Dallas City Manager and the Dallas Civil Service Trial Board were not authorized, on appeal to them, to increase the punishment given to three police officers by the Dallas Chief of Police.

We reverse and remand.

On April 25, 1978, a Dallas citizen, David Richburg, filed a complaint alleging that he had been falsely arrested and beaten by two Dallas police officers, Jimmie Kyser and Conrad Medlock. A Dallas police department internal administrative investigation revealed that the two officers had acted at the instigation of a third officer, Paul C. Hammond. Police Chief Don Byrd exercised his authority under the Dallas City Charter, Ch. XII, sec. 4 (Supp. # 1 1976), to suspend Kyser and Medlock for thirty days and Hammond for five days. The three officers appealed to the city manager's office. Assistant City Manager Don Cleveland, acting on behalf of the city manager, conducted hearings and ruled that the three officers should be discharged from their employment by the City.

The officers then appealed to a civil service trial board, as provided for in Ch. XVI, sec. 12 (Supp. # 1 1976) of the city charter. The board held that Kyser should be reinstated without back pay for the nine months he had been discharged; that Medlock should be reinstated without his twelve months of back pay; and that the termination of Hammond should be sustained.

Hammond appealed the trial board's decision to the district court, challenging the sufficiency of the evidence and the authori-

Debra G. Kress, Asst. City Atty., Dallas, for appellant.

ty of the city manager and trial board to enhance the punishment given by the police chief. Hammond thereafter died and his estate, represented by Charles Hammond, continued the suit. Kyser and Medlock intervened, also challenging the authority of the city manager and trial board and, in addition, seeking back pay.

The trial court held that neither the city manager nor the trial board had the authority to increase the punishment given by the chief of police. Kyser and Medlock were awarded back pay, benefits and seniority to the time of their discharge. Hammond's estate was awarded back pay and benefits.

On appeal from the trial court, the City of Dallas raises four points of error: 1) the trial court erred in ruling that the city manager cannot enhance punishment handed out by the police chief; 2) the trial court erred in ruling that the enhancement was improper because under the city charter the trial board is authorized to make a *de novo* review; 3) the trial court erred in reinstating Hammond because the trial board's findings that Hammond violated police department rules have a reasonable basis in fact and are not arbitrary or capricious; and 4) the trial court erred in reinstating Hammond because the trial board's finding that Hammond should be discharged has a reasonable basis in fact and is not arbitrary or capricious. We will address the first two points together and the City's third and fourth points together.

In its first two points of error, the City argues that the city manager and trial board have the authority to impose a greater or more severe disciplinary measure than that ordered by the chief of police. We agree.

The Dallas City Charter, Ch. VI, secs. 1, 2(3) (Supp. # 1 1976) provides that the city manager has the power and duty, except as otherwise provided by the charter, to appoint and remove all heads of departments and all subordinate officers and employees of the City.

Chapter XII, sec. 4 of the charter provides for initiation of discipline procedures against an officer by the police chief, with the right of appeal to the city manager:

Section 4. Suspension of police; hearing.

The chief of police shall have the exclusive right to suspend for a definite time or discharge any of the officers or employees who may be under his jurisdiction and control for incompetence, neglect of duty, immorality, drunkenness, or failure to obey orders given by the proper authority, or the orders, rules and regulations promulgated by the chief of police. If any officer or employee be suspended or discharged, as herein provided, the chief of police shall forthwith in writing certify the fact, together with the cause for the action, to the city manager. The officer or employee suspended or discharged shall have five (5) days from receipt of notice of such action within which to demand a hearing before the city manager, but such demand must be made in writing. *If demanded, the city manager shall proceed to inquire into the cause of the suspension or discharge and render judgment thereon, which judgment, if the charge be sustained, may be suspension, reduction in rank, discharge, or such modification or amendment as to him may seem just and equitable under all the facts and circumstances of the particular case.* Such judgment shall be final unless such suspended or discharged officer or employee shall desire to avail himself to the right of a public hearing before a trial board or hearing officer as provided by this charter. (Amend. of 4–3–76, Prop. No. 5) [Emphasis added.]

This section provides that the city manager has the authority, if the charge against the officer be sustained, to suspend, reduce in rank, discharge, or make such modification or amendment as may to him seem just and equitable under the facts and circumstances of the case. The word "amend" is defined in Black's Law Dictionary as "[t]o improve. To change for the better by removing defects or faults. To change, correct, revise. *Texas Co. v.*

*Fort,* 168 Tenn. 679, 80 S.W.2d 658, 660." The word "modify" is defined as "[t]o alter; to change in incidental or subordinate features; enlarge; extend; amend; limit; reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease. *Johnson v. Three Bays Properties No. 2, Inc.,* Fla. App., 159 So.2d 924, 926." BLACK'S LAW DICTIONARY 74, 905 (5th Ed.1979). This grant of the right to modification or amendment is not restricted by any words which would limit the right to one of diminishment of the punishment previously assessed. Had that been the intent of the charter, it would seem reasonable that it would have said so.

■ The officers assert that the city manager cannot increase the police chief's punishments because the chief has "the exclusive right to suspend for a definite time or discharge any of the officers or employees who may be under his jurisdiction or control," but this argument totally ignores the provisions of the charter quoted above which clearly confer upon the city manager the right to suspend, discharge, and modify and amend. We construe the use of the word "exclusive" in this context as indicating the limitation on what would otherwise be the city manager's authority to initiate disciplinary proceedings against a police officer. The use of the term "exclusive" shows that the city manager's authority in discipline against a police officer is limited to the appellate authority described in this section of the charter.

The officers also rely on the provisions of the general orders of the police department, which in no way take from the city manager authority conferred upon him by the city charter.

■ Chapter XVI, sec. 12 of the charter provides for a trial board to hear appeals from the decision of the city manager in the case of an officer who has either been discharged or reduced in rank. This section confers upon the board the authority to sustain or review the action of the city manager or modify and amend the same as the board might deem just and equitable under all the facts and circumstances of the particular case. In this case, the trial board sustained the action of the city manager as to Officer Hammond and reduced it as to two other officers. No one has questioned the board's right to take such an action, assuming that the city manager had the right to enhance the punishment.

We find that the city manager has the authority to enhance the punishment assessed by the chief of police, and that the trial board has the authority to make a *de novo* review. We, therefore, sustain the City's points of error one and two.

The City of Dallas argues in its third and fourth points of error that the trial court's actions were erroneous because on appeal from an administrative ruling, the court is limited to an examination of the record below to determine whether there was substantial evidence to support the administrative rulings, and whether the rulings were arbitrary or capricious. According to the City, since there was substantial evidence the rulings were not arbitrary or capricious, this court should sustain the trial board's rulings.

■ In reply, Kyser, Medlock and Hammond point out that no findings of fact or conclusions of law were ever requested or filed in this case. In a trial to the court where no findings of fact or conclusions of law are filed or requested, the judgment of the trial court implies all necessary findings of fact in support thereof. *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Therefore, say the officers, the trial court's judgment reversing the trial board implies findings that the trial board's rulings were not supported by substantial evidence or that the rulings were arbitrary or capricious.

The judgment in this cause makes clear that the trial court only considered the question of the city manager's right to enhance the punishment and did not review the evidence before the trial board in light of the substantial evidence test. We decline to undertake this task ourselves be-

cause such a finding would be a finding of fact in the first instance by this court, as distinguished from a review of a fact found by the trial court. *See Paul v. Nance Buick Company*, 487 S.W.2d 426, 429 (Tex. Civ.App.—El Paso 1972, no writ). Instead, we remand this cause to the trial court for further proceedings consistent with this opinion. We overrule points of error numbers three and four.

The judgment is reversed and remanded.

ASHWORTH, Justice, dissenting.

I respectfully dissent.

The City Manager did not have the authority to enhance the disciplinary action of the Chief of Police.

All of the pertinent provisions of the Dallas City Charter must be examined together in order to determine their intent and effect. Chapter XII, sec. 4, provides that the Chief of Police has the *exclusive* right to suspend or discharge officers. The same section provides that an officer *who has been discharged or suspended* has the right to a hearing before the City Manager. The City Manager shall proceed to inquire into the cause of the suspension or discharge and render judgment thereon, which judgment, if the charge be sustained, may be suspension, reduction in rank, discharge, or such modification or amendment as to him may seem just and equitable under all the facts and circumstances of the particular case.

We first note that the provisions of this section are directed toward officers who have been suspended or discharged by the Chief of Police. While a harsher punishment than suspension would be discharge, it logically follows that the action available to the City Manager is to affirm the suspension or discharge, or to reduce it. There certainly is no express provision for enhancement.

The majority state that the provision for modification or amendment gives the City Manager the authority to increase the disciplinary action of the Chief of Police and cite Black's Law Dictionary as authority.

It is doubtful the framers of the Charter had Black's Law Dictionary before them as the Charter provisions were being formulated. It is more reasonable to assume that the usual definitions of such words were before them, such as those from WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981): *Modify:* "to make more temperate and less extreme: lessen the severity of;" *Modification:* "the act or action of changing something without fundamentally altering it;" *Alter:* "to cause to become different in some particular characteristic ... without changing into something else;" *Alteration:* "the act or action of altering ... the result of altering." To say that modification and alteration as used in the context of punishment or disciplinary action, provide for increase or enhancement in severity flies in the face of the common meaning and understanding of those words. The majority opinion states:

This grant of the right to modification or amendment is not restricted by any words which would limit the right to one of diminishment of the punishment previously assessed. Had that been the intent of the charter, it would seem reasonable that it would have said so.

This writer borrows those same statements and says:

This grant of the right to modification or amendment does not contain any words which would authorize enhancement of the punishment previously assessed. Had that been the intent of the Charter, it would seem reasonable that it would have said so.

When the Charter says the Chief of Police has the *exclusive* right to suspend or discharge, it means just exactly what it says. On appeal, the City Manager can affirm such action but cannot himself assess it for the first time.

There is yet another, and more compelling reason, why the City Manager cannot assess suspension or discharge for the first time. All Dallas policemen live, and sometimes die, by the Dallas Police Department General Orders. Section 502.07 of General

Order 500 was apparently drafted from Ch. XII, sec. 4, of the Charter. Such General Order provides for the appeal of disciplinary action to the City Manager. If the City Manager *upholds* a discharge, demotion or suspension, then the employee may appeal to the Civil Service Trial Board. Again, we see the General Order contemplates at most only an affirmance of the disciplinary action of the Chief of Police, and certainly not an enhancement. To hold that despite such order, the City Manager can discharge a policeman who appeals a five-day suspension, is contrary to all concepts of justice and fair play.

The judgment should be affirmed.

JORDAN and BURDOCK, JJ., concur.